**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STAN ZAKINOV, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>    v.<br><br>BEYOND MEAT, INC.,<br><br>                Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(1 ) BREACH OF EXPRESS WARRANTY;<br>(2) BREACH OF IMPLIED WARRANTY;<br>(3) FRAUDULENT MISREPRESENTATION;<br>(4) FRAUD BY OMISSION;<br>(5) NEGLIGENT MISREPRESENTATION;<br>(6) UNJUST   ENRICHMENT;<br>(7) VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT;<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      Plaintiff Stan Zakinov, individually and on behalf of all others similarly situated, by and through his undersigned attorneys, brings this Class Action Complaint against Defendant Beyond Meat, Inc. ("Beyond Meat") for its negligent, reckless, and/or intentional practice of misrepresenting the content, quality, and benefits of Beyond Meat products ("Products") and omitting the presence of synthetic ingredients on the labels, packaging, and advertising of these Products sold throughout the United States, including this District. Plaintiff brings this action on behalf of the proposed Class and Subclass (as defined below) for damages and equitable remedies. Plaintiff alleges the following based upon personal knowledge as well as investigation by his counsel and, as to all other matters, upon information and belief. Plaintiff believes that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

## PARTIES

2.      Plaintiff Stan Zakinov is currently a resident of Houston, Texas. While residing in San Diego, California, he purchased Beyond Burger, Meatballs, and Ground Beef from Smart and Final, Vons, and Sprouts between January 2019 and November 2021 in California. After relocating he also made purchases in Houston, Texas. Plaintiff Zakinov relied on the label on Beyond Meat Products regarding the protein content and quality. Plaintiff Zakinov also relied on the marketing and packaging that the Beyond Meat Product Plaintiff Zakinov was all natural, organic, and healthy, and believed they were high quality products. During that time, based on Beyond Meat's material omissions and false and misleading claims, representations, advertisements, and any other marketing by Beyond Meat, Mr. Zakinov was unaware that the Products did not contain the quantity or quality of protein advertised, did not have the advertised health benefits, and the product contained artificial, synthetic materials. Plaintiff Zakinov would not have purchased the Products, or he would not have paid as much for the Products if that information was fully disclosed. Plaintiff Zakinov was injured when he purchased the Products which have less value than what he paid for based on the misrepresentations of the content, quality, and benefits of protein in the Products, and the presence of inorganic ingredients.

3.      As a result of Beyond Meat's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when he purchased the Products that did not deliver what was promised. He purchased the Products based on the assumption and understanding that the labeling of the Products was accurate and that it provided the content and quality of protein as advertised and contained only organic ingredients. Plaintiff would not have paid as much for the Products had he known that the Beyond Meat Products did not

contain the advertised level and quality of protein or did not contain only all natural and organic ingredients. Further, Plaintiff desires to purchase these Products in the future, but only if he can be assured that the Products actually contain the advertised %DV of protein, and are made from all-natural ingredients as advertised, and do not contain artificial and/or synthetic ingredients and/or any other ingredients or contaminants that do not conform to the packaging claims. Should Plaintiff encounter Beyond Meat Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Products.

4.     Defendant Beyond Meat, Inc. was founded in 2009 and is incorporated in Delaware. It has its headquarters at 1325 East El Segundo Boulevard., El Segundo, California, 90245.

5.     Beyond Meat formulates, develops, manufactures, labels, distributes, markets, advertises, and sells Beyond Meat Products throughout the United States, including sales in this District, during the Class Period. The advertising, labeling, and packaging for the Beyond Meat Products, relied upon by Plaintiff, were prepared, reviewed, and/or approved by Beyond Meat and its agents in California, and were disseminated to this District from California by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Beyond Meat Products were designed to encourage customers to purchase the Products and misled the reasonable consumer, *i.e.,* Plaintiff and the Class, into purchasing the Products. Beyond Meat owns, manufactures, and distributes the Beyond Meat Products, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

3

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant, and (3) the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Plaintiff resides in this district, Plaintiff has suffered injury as a result of Beyond Meat's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Beyond Meat conducts substantial business in this District, Beyond Meat has intentionally availed itself of the laws and markets of this District, and Beyond Meat is subject to personal jurisdiction in this District.

## FACTS

### A.      Background

8.      Beyond Meat manufactures and sells meat substitute products. These Products are made primarily of plant proteins derived from peas, mung beans, fava beans, and brown rice, plant-based fats such as cocoa butter, carbohydrates such as potato starch, and other ingredients.[1]

9.      Beyond Meat holds itself out as a producer of products that contain high quantities of protein. Indeed, Beyond Meat has described its Products as "the future of

---

[1] Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/about/our-ingredients/.

protein," which the company hopes to "perfectly replace animal protein with plant protein."[2] Beyond Beef Products have been prominently featured beside packaged meat in certain grocery stores.[3] Ethan Brown, founder and CEO of Beyond Meat, claims that 93 percent of people purchasing a Beyond Burger are not vegan or vegetarian,[4] and the Beyond Beef website specifically stated "Part of our vision is to re-imagine the meat section [in grocery stores] as the Protein Section of the store. In this way, we can help introduce plant-based options to people where they are already purchasing other forms of protein."[5] Resultantly, Beyond Beef aggressively advertises the protein content of its Products on their packaging and in print and digital advertising.

10.    Additionally, Beyond Meat advertises its Products as nutritious options, free of GMOs and synthetic ingredients.[6] In interviews, CEO Ethan Brown has said that the Products contain "nothing artificial" and that the company is committed to using "no artificial ingredients."[7]

---

[2] *Frequently Asked Questions*, Beyond Meat (last visited Dec. 20, 2022), https://web.archive.org/web/20200617180303/https://www.beyondmeat.com/faqs/ (capturing the Beyond Meat website on June 17, 2020).

[3] *Beyond Meat is Having a Global Influence on How Brands Merchandise Vegan Protein*, LiveKindly (last visited Dec. 20, 2022), https://www.livekindly.co/beyond-meat-having-global-influence-how-brands-merchandise-vegan-protein/.

[4] *93% of People Buying the Beyond Burger Are Meat Eaters*, LiveKindly (last visited Dec. 20, 2022), https://www.livekindly.co/beyond-burger-statistics-meat-eaters/.

[5] *Products*, Beyond Meat (last visited Dec. 20, 2022), https://web.archive.org/web/20200604185224/https://www.beyondmeat.com/products/the-beyond-burger/. (capturing the Beyond Meat website on June 4, 2020).

[6] *See, e.g.*, Anna Starostinetskaya, *Octavia Spencer Stars in Beyond Meat's First Television Commercial*, VEGNEWS (Aug. 3, 2020), https://vegnews.com/2020/8/octavia-spencer-stars-in-beyond-meat-s-first-television-commercial.

[7] *Beyond Meat is Having a Moment*, BLOOMBERG (June 11, 2020), https://www.bloomberg.com/opinion/articles/2020-06-11/beyond-meat-bynd-ceo-ethan-brown-talks-growth-eating-trends#xj4y7vzkg; Tyler Clifford, *Beyond Meat CEO Looks to "Win Consumers" Over During Meat Supply Shortage with "Value Packs"*, CNBC (May 6, 2020), https://www.cnbc.com/2020/05/06/beyond-meat-ceo-looks-to-win-consumers-over-during-meat-shortage.html.

11.     The Beyond Meat Products include but are not limited to the following: Beyond Burger Plant-Based Patties, Beyond Breakfast Sausage, Beyond Jerky, Beyond Sausage, Beyond Beef Crumbles, Beyond Ground Beef, Beyond Beef Mince, Beyond Chicken, and Beyond Meatballs.[8]

**B.     Beyond Meat Overstates the Products' Protein Content, Quality, and Benefits**

12.     Protein is a vital part of a healthy diet and helps build and repair muscles, oxygenate red blood cells, digest food, and process other body chemicals, and regulate hormones.[9] A high-protein diet has benefits associated with building lean muscle, maintaining a healthy body weight, and curbing appetite.[10]

13.     The Recommended Dietary Allowance of protein—the amount needed to maintain the health of 97–98% of individuals in groups according to age and gender—is 46 grams per day for women and 56 grams per day for men.[11]

14.     In addition to the importance of protein in our diets, studies have found that consuming plant-based proteins specifically has health benefits, such as reducing the risk of death from heart disease.[12] A 2019 study found that those who consumed more protein from animal-based sources in place of plant-based sources increased their risk of death from

---

[8] *Products*, Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/products/.
[9] *Why is Protein Important in Your Diet?*, Piedmont (last visited June 8, 2022), https://www.piedmont.org/living-better/why-is-protein-important-in-your-diet.
[10] *Id.*
[11] Sandi Busch, *USDA Protein Requirements in Grams*, SFGATE (Dec. 14, 2018), https://healthyeating.sfgate.com/usda-protein-requirements-grams-8619.html.
[12] *Protein*, Physicians Committee for Responsible Medicine (last visited Dec. 20, 2022), https://www.pcrm.org/good-nutrition/nutrition-information/protein#:~:text=Protein%20deficiency%20is%20almost%20unheard,get%20more%20than%20enough%20protein.

6

chronic disease by 23%.[13] As a result, many consumers seek out high protein foods generally, and plant-based proteins in particular.

15.     Beyond Meat holds itself out as a producer of such foods. As noted above, Beyond Meat advertises its Products as excellent sources of plant-based protein. Indeed,



during the Class Period, Beyond Meat advertised that "our products deliver greater or equal levels of protein than their animal-based counterparts."[14] The following are screenshots archived from the official Beyond Meat website.[15]

---

[13] *Animal Protein Linked to Death in Those With Cancer, Diabetes, and Heart Disease*, Physicians Committee for Responsible Medicine (Apr. 12, 2019), https://www.pcrm.org/news/health-nutrition/animal-protein-linked-death-those-cancer-diabetes-and-heart-disease.

[14] *Our Ingredients*, Beyond Meat (last visited Dec. 20, 2020), https://web.archive.org/web/20200608112130/https://www.beyondmeat.com/about/our-ingredients/.

[15] As will be detailed *infra*, Beyond Meat appears to have eliminated from its website all references to "greater or equal levels of protein" than other meats, as well as reversed its claims about the presence of synthetic ingredients, generally around the time they were sued by two different Plaintiffs for false advertising and other related claims. *Roberts, et al., v. Beyond Meat, Inc.*, Case No. 1:22-cv-02861, ECF No. 1 (N.D. Ill. May 31, 2022); *Don Lee Farms v. Beyond Meat, Inc.*, Case No. 2:22-cv-3751, ECF No. 1 (C.D. Ca. June 2, 2022); *see also Our Ingredients*, Beyond Meat, (last visited Dec. 20, 2022), https://web.archive.org/web/20200608112130/

16.     Additionally, almost every Beyond Meat product advertises or advertised its

protein quantity prominently on its packaging.










17.     The amount of protein advertised on the front of the Products' packaging is

listed in the ingredients as derived from a plant-based protein, often "Pea Protein" or "Mung

_____

https://www.beyondmeat.com/about/our-ingredients/ (capturing the Beyond Meat website on June
8, 2020).

Bean Protein".[16] For example, the Beyond Burger Plant-Based Patties advertised "20G of Plant Protein Per Serving".[17]



18.     The ingredients label listed or lists "Pea Protein" as the primary source of the advertised protein content.

**INGREDIENTS:** Water, Pea Protein†, Expeller-Pressed Canola Oil, Refined Coconut Oil, Rice Protein, Natural Flavors, Dried Yeast, Cocoa Butter, Methylcellulose, Contains 1% or less: Potato Starch, Salt, Potassium Chloride, Beet Juice Color, Apple Extract, Pomegranate Concentrate, Sunflower Lecithin, Vinegar, Lemon Juice Concentrate, Vitamins and Minerals (zinc sulfate, niacinamide [vitamin B3], pyridoxine hydrochloride [vitamin B6], cyanocobalamin [vitamin B12], calcium pantothenate).
†Peas are legumes. People with severe allergies to legumes like peanuts should be cautious when introducing pea protein into their diet because of the possibility of a pea allergy. Contains no peanuts or tree nuts.

---

[16] *See e.g.*, *Beyond Jerky Original*, Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/products/beyond-meat-jerky?variant=original;   *Beyond Beef*, Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/products/beyond-beef?variant=ground.
[17] *Beyond Burger*, Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/products/the-beyond-burger.

19.     The nutrition label calculates or calculated that the 20 grams of (pea-derived) protein represents 40% of the Daily Value of protein.

## Nutrition Facts

2 servings per container
Serving size                                          1 Patty (113g)

|  | Per serving | | Per container | |
|---|---|---|---|---|
| **Calories** | **230** | | **450** | |
| | | % DV* | | % DV* |
| **Total Fat** | 14g | **18%** | 28g | **36%** |
| Saturated Fat | 5g | **25%** | 10g | **50%** |
| _Trans_ Fat | 0g | | 0g | |
| Polyunsaturated Fat | 3g | | 5g | |
| Monounsaturated Fat | 6g | | 11g | |
| **Cholesterol** | 0mg | **0%** | 0mg | **0%** |
| **Sodium** | 390mg | **17%** | 780mg | **35%** |
| **Total Carb.** | 7g | **3%** | 14g | **5%** |
| Dietary Fiber | 2g | **7%** | 4g | **14%** |
| Total Sugars | 0g | | <1g | |
| Incl.Added Sugars | 0g | **0%** | 0g | **0%** |
| **Protein** | 20g | **40%** | 40g | **80%** |
| Vitamin D | 0mcg | 0% | 0mcg | 0% |
| Calcium | 100mg | 8% | 200mg | 15% |
| Iron | 4mg | 20% | 8.1mg | 45% |
| Potassium | 330mg | 6% | 650mg | 15% |
| Niacin | 4.7mg NE | 30% | 9.4mg NE | 60% |
| Vitamin B6 | 0.3mg | 15% | 0.6mg | 35% |
| Vitamin B12 | 2.4mcg | 100% | 4.8mcg | 200% |
| Pantothenic Acid | 0.5mg | 10% | 1mg | 20% |
| Zinc | 4.6mg | 40% | 9.2mg | 80% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

20.    The practice is the same for all Beyond Meat Products. For example:

### i.      Beyond Meat Jerky



## Nutrition Facts

1.0 About servings per container

**Serving size**

**Amount per serving**

**Calories** ........................................................ 90

|  | % Daily value* |
|---|---|
| **Total Fat** 2g | 3% |
| Saturated Fat 0.5g | 3% |
| Trans Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 500mg | 22% |
| **Total Carbohydrate** 8g | 3% |
| Dietary Fiber 1g | 4% |
| Sugar 5g | |
| **Protein** 10g | 15% |
| Calcium 20mg | 2% |
| Iron 1.8mg | 10% |
| Potassium 100mg | 2% |
| Vitamin D 0mcg | 0% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

**ii.      Beyond Breakfast Sausage Links**



# Nutrition Facts

3 servings per container
**Serving size  2 cooked patties (58g)**

**Amount per serving**
## Calories 180

| | % Daily Value* |
|---|---|
| **Total Fat** 12g | **15%** |
| Saturated Fat 4.5g | **23%** |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 270mg | **12%** |
| **Total Carbohydrate** 6g | **2%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | **0%** |
| **Protein** 11g | **22%** |
| Vitamin D 0mcg | 0% |
| Calcium 60mg | 4% |
| Iron 2.8mg | 15% |
| Potassium 230mg | 5% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories in a day is used for general nutrition advice.

### iii.     Beyond Beef Crumbles





21.     According to the FDA, the % Daily Value (%DV) "is the percentage of the Daily Value for each nutrient in a serving of the food. The Daily Values are reference amounts (expressed in grams, milligrams, or micrograms) or nutrients to consume or not to

exceed each day. The %DV shows how much a nutrient in a serving of food contributes to a total daily diet. The %DV helps you determine if a food is high or low in a nutrient."[18]

22.     The United States Food and Drug Administration ("FDA") governs the nutritional labeling of food, pursuant to the Food, Drug, and Cosmetics Act, 21 C.F.R. § 101.9(c)(7) ("FDCA") and the Nutrition Labeling and Education Act of 1990.

23.     Under the FDCA, manufacturers must publish a product's protein content on its nutritional label as "[a] statement of the number of grams of protein in a serving." FDCA § 101.9(c)(7).

24.     Under the FDCA, in most circumstances, "[p]rotein content may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' *except when official AOAC procedures described in this paragraph . . . require* [another] *factor. Id.* (emphasis added).

25.     Protein quality is subject to such heightened testing requirements under the FDCA, and requires that "[t]he corrected amount of protein (gram) per serving for foods represented or purported for adults and children 1 or more years of age is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score *corrected for protein digestibility*. . . The protein digestibility-correct amino acid score shall be determined by methods given . . . in 'Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation' except that when official AOAC procedures described in paragraph (c)(7) of this section require a specific factor other than 6.25, that specific factor shall be used." *Id.*

---

[18] *How to Understand and Use the Nutrition Facts Label,* U.S. Food & Drug Administration, https://www.fda.gov/food/new-nutrition-facts-label/how-understand-and-use-nutrition-facts-label#:~:text=The%20Daily%20Values%20are%20reference,to%20a%20total%20daily%20diet (last updated Feb. 25, 2022).

(selected internal quotations omitted). This kind of testing is referred to as the Protein Digestibility Amino Acid Corrected Score ("PDCAAS").

26.     Thus, the FDCA requires that for any product making a protein claim—such as those prominently displayed on the front packaging of the Products—it must also contain a statement of the protein content of the %DV calculated using the PDCAAS. *See* 21 C.F.R. § 101.9(c)(7)(ii). In other words, while the Product may advertise the raw protein content calculated using the less-rigorous nitrogen method (such as the Beyond Burger's prominent claim that "This Product Contains 20G of Plant-Based Protein"), it is *also* required to state the protein content as a percentage of the Daily Value using the more rigorous PDCAAS method. *Id.*

27.     Beyond Meat does not comply with these requirements. Beyond Meat not only overstates the actual protein amount in its Products, but also inflates the %DV levels  on the labels by failing to use the required PDCAAS score in its calculation. Instead, Beyond Meat calculates the %DV of its protein based on the simple nitrogen method. The problem with this, especially as it relates to the Products, is that plant-based proteins have a substantially lower PDCAAS score. While the PDCAAS score of traditional beef is .92 out of 1, the average PDCAAS scores of Beyond Meat's Beef Crumbles and Beyond Burger are .645 and .8875, respectively.[19] The table below also shows PDCAAS scores of various sources of protein.[20]

---

[19] Jay R. Hoffman & Michael J. Falvo, *Protein – Which is Best?,* 3 J. Sports Sci. Med. 118 (2004), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3905294/.
[20] Stephan van Vliet, Nicholas A Burd & Luc J C van Loon, *The Skeletal Muscle Anabolic Response to Plant- versus Animal-Based Protein Consumption*, Journal of Nutrition (2015), https://pubmed.ncbi.nlm.nih.gov/26224750/.

| Source | PDCAAS |
|---|---|
| Milk | 1.00 |
| Whey | 1.00 |
| Egg | 1.00 |
| Soy protein isolate | 1.00 |
| Casein | 1.00 |
| Beef | 0.92 |
| Soy | 0.91 |
| Pea | 0.67 |
| Oat | 0.57 |
| Whole wheat | 0.45 |

Thus, each serving of the Product actually contains less digestable protein than advertised, and in order to achieve the actual listed %DV, consumers will need to consume more than the listed serving size.

28.     Due to this incorrect method of calculation failing to reflect the required PDCAAS score, upon information and belief, the %DV of protein in the Products—or the percentage of the necessary daily protein the customer expects to receive by consuming one serving size of the Product—is substantially lower than what is advertised on the packaging. Because of this misrepresentation, Consumers are led to believe that the Products provide more protein that they actually provide.

29.     Beyond Meat had a duty to ensure that the Products lived up to its representations about their content of protein. As such, Beyond Meat knew or should have known that the Products had substantially less protein, both in raw amounts and as %DV than was advertised on the Products' labels, packaging, advertising, and statements.

30.    Beyond Meat specifically represents that "our products deliver greater or equal levels of protein than their animal-based counterparts."[21] This statement is explicitly false, due to the difference in advertised %DV of protein and the actual protein content of the Products.

31.    However, Beyond Meat made these false representations, knowing that the claimed composition of the Products (as well as the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider in selecting a Beyond Meat Product over a competing product. By negligently and/or deceptively representing, marketing, and advertising the Products as containing "greater or equal levels of protein than their animal-based counterparts" and/or the amount of protein advertised as a percentage of Daily Value, Beyond Meat wrongfully capitalized on, and reaped enormous profits from, consumers' preference for high-protein, plant-based foods.

32.    Indeed, Plaintiff was misled by these false representations. Plaintiff purchased the Products based in part on Beyond Meat's advertisements of the amount of protein the Products provide as well as the quality of their protein. If Plaintiff had been aware that the Products did not contain the advertised quantity or quality of protein, he would not have purchased or paid as much for the Products.

**C.    Beyond Meat Represents the Products as "All Natural," and Containing Only "Organic" or "Non-Synthetic" Ingredients Despite Knowing the Products Contain Synthetic Ingredients**

33.    During the Class Period, Beyond Meat held itself out as making products that were "all-natural," "organic," or containing no "synthetic" ingredients.[22]

---

[21] *Our Ingredients*, Beyond Meat (last visited Dec. 20, 2020), https://web.archive.org/web/20200608112130/https://www.beyondmeat.com/about/our-ingredients/.
[22] *See e.g.*, Starostinetskaya, *supra* note 8.

34.     In interviews, CEO Ethan Brown has said that the Products contain "nothing artificial" and that the company is committed to using "no artificial ingredients."[23] He further stated that Beyond Meat's "commitment to all natural and non-GMO ingredients[] is the core of [their] company."[24]

35.     In fact, from at least September 2020 to May 2021, Beyond Meat specifically stated that its Products did not contain "synthetically produced ingredients."

WHAT IS BEYOND MEAT® MADE OUT OF?

Our ingredients are simple and made from plants – without GMOs or synthetically produced ingredients. Beyond Meat sources proteins, fats, minerals, flavors and colors, and carbohydrates from plant-based sources like peas, beans, potatoes and brown rice. More on Beyond Meat's ingredients here.

36.     However, the current Beyond Meat website backtracks on that promise.[25]

37.     Far from remaining committed to its claim that the Products do not contain synthetically produced ingredients, the Beyond Meat "Ingredients" webpage now discloses that one of its ingredients is methylcellulose.[26]

WHAT IS BEYOND MEAT® MADE OUT OF?

We start with simple plant-based, non-GMO ingredients. Beyond Meat sources proteins, fats, minerals, flavors and colors, and carbohydrates from plant-based sources like peas, beans, potatoes and brown rice. More on Beyond Meat's Ingredients here.

---

[23]     https://www.bloomberg.com/opinion/articles/2020-06-11/beyond-meat-bynd-ceo-ethan-brown-talks-growth-eating-trends#xj4y7vzkg; https://www.cnbc.com/2020/05/06/beyond-meat-ceo-looks-to-win-consumers-over-during-meat-shortage.html; Sully Barrett, *How the Impossible Burger is Changing the Debate Over GMO Foods,* CNBC (Feb. 13, 2020) https://www.cnbc.com/2020/02/13/how-the-impossible-burger-is-changing-the-debate-over-gmo-foods.html#:~:text=One%20difference%20is%20Impossible's%20use,investors%20have%20weighed%20the%20risks (emphasis added).

[24] Beyond Meat, Beyond Meat Opens Doors of New State-of-the-Art Innovation Center in Los Angeles, Expanding Research Footprint and Fueling Progress Toward a Perfect Build of Meat Directly from Plants (last visited Dec. 20, 2022), https://investors.beyondmeat.com/news-releases/news-release-details/beyond-meat-opens-doors-new-state-art-innovation-center-los.

[25]     *Frequently Asked Questions,* Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/faqs.

[26] *Our Ingredients,* Beyond Meat (last visited Dec. 20, 2022), https://www.beyondmeat.com/en-US/about/our-ingredients/.



38.     Methylcellulose is a synthetically made filler used in processed foods as a cheap additive that allows food manufacturers increase weight and add texture without adding nutritional benefits. Methylcellulose is literally a synthetically modified form of cellulose "used as a bulk-forming and stool-softening agent for treatment of constipation".[27] It is a chemical compound synthesized from treating vegetable cellulose with a chemical agent and treating it with methyl chloride.[28] It is not naturally occurring.[29]

39.     Until recently, Beyond Meat failed to disclose the existence of this not natural, inorganic, synthetic compound in any of its advertising, marketing, or packaging for the Products. Beyond Meat's averments on its website, in advertisements, and in corporate statements about the natural quality of its ingredients are not only misleading, but they are also demonstrably false. In

---

[27] *Methylcellulose,* ScienceDirect (last visited Dec. 20, 2022), https://www.sciencedirect.com/topics/nursing-and-health-professions/methylcellulose (summarizing Keith Hillier, *xPharm: The Comprehensive Pharmacology Reference* (2007)).
[28] Devabaktuni Lavany et al., *Sources of Cellulose and Their Applications – A Review*, 2 INT'L J. DRUG FORMULATION & RSCH.19, 30 (2011) (emphasis added).
[29] *Id.*

2020, a spokesperson for Beyond Meat confirmed that methylcellulose was an ingredient in its burger patties but would not give an exact gram amount.[30]

40.   Beyond Meat had a duty to ensure that its Products lived up to these representations and marketing positioning as Products that were "natural," "organic," or containing "no synthetic ingredients." Beyond Meat knew or should have known that the Products included non-natural, artificial, inorganic, synthetic methylcellulose, and that the presence of methylcellulose did not conform to the Products' labels, packaging, advertising, and statements. Beyond Meat also had a duty to disclose any ingredients that would impact consumers' decisions to purchase, such as the existence of a non-natural, artificial, and synthetic filler such as methylcellulose. Beyond Meat's omission induced Plaintiff and the Class to purchase or pay more for the Products that they otherwise would have if they had known about the non-natural, artificial, inorganic, synthetic ingredient in the Products.

41.   Based on the omission and false representations of the quality of, and ingredients in, its Products, Beyond Meat led the consumers to purchase the Products, knowing that the claimed make-up of the Products (as well as the other false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking Beyond Meat Products instead of competing products. The consumers who chose Beyond Meat Products paid more than what they would have because they believed that the Products were indeed provided high levels of healthy protein and were natural with no artificial ingredients. By negligently and/or deceptively representing, marketing, and advertising the Products as natural, organic, and containing no synthetic ingredients, Beyond Meat wrongfully capitalized on, and

---

[30] Erica Chayes Wida, *Do Impossible and Beyond Meat Burgers Really Contain Laxatives?,* TODAY (Feb. 4, 2020) https://www.today.com/food/do-impossible-beyond-meat-burgers-really-contain-laxatives-t173061.

reaped enormous profits from, consumers' strong preference for organic and synthetic-free products.

42.     Indeed, Plaintiff was misled by these false representations. Plaintiff purchased the Products based in part on Beyond Meat's advertisements of the nature of their ingredients and the statement that they were "all natural," "organic," and did not contain synthetic ingredients. If Plaintiff had been aware that the Products did not contain only natural, organic, non-synthetic ingredients, he would not have purchased or paid as much for the Products.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

> All persons in the United States who, from June 9, 2019 to the present, purchased the Beyond Meat Products for personal use and not for resale ("Class").

44.     Plaintiff also brings this action individually and on behalf of the following Texas Subclass:

> All persons who are citizens of the State of Texas who, from June 9, 2019, to the present, purchased the Beyond Meat Products for personal use and not for resale ("Texas Subclass").

45.     Excluded from the Class and Subclass is the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

46.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable. Purchasers of the Beyond Meat Products can identify their purchases through receipts, store rewards programs, and their own testimony.

47.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Class in a single action will provide substantial benefits to the parties and Court.

48.    Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

a.  Whether Beyond Meat's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

b.  Whether Beyond Meat made deceptive or misleading statements that reasonable consumers were likely to rely upon to their detriment;

c.  Whether Beyond Meat had knowledge that those representations were false, deceptive, and misleading;

d.  Whether Beyond Meat continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

e.  Whether a representation that a product contains a stated amount of protein and contains only natural, organic, or non-synthetic ingredients is material to a reasonable consumer;

f.  Whether Beyond Meat violated the laws of the State of Texas;

g.  Whether Beyond Meat breached its express warranties;

h.  Whether Beyond Meat breached its implied warranties;

i.  Whether Beyond Meat engaged in unfair trade practices;

j.  Whether Beyond Meat engaged in false advertising;

k.  Whether Beyond Meat made negligent and/or fraudulent misrepresentations and/or omissions;

l.  Whether Plaintiff and members of the Class did not receive the benefit of their bargain when purchasing the Products;

m.  Whether Plaintiff and members of the Class are entitled to actual, statutory, and punitive damages; and

n.  Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

49.     Beyond Meat engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

50.     Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Beyond Meat's conduct.

51.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

52.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

53.     Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

54.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
**Fraudulent Misrepresentation Against Defendant on Behalf of the Class
(or, alternatively, the State Subclass)**

55.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

56.     Beyond Meat falsely represented to Plaintiff and the Class that its Products:

        a.      contain the %DV of protein advertised on the packaging;

        b.      are made only from "natural" ingredients;

        c.      are made without "artificial" ingredients; and

        d.      are made without "synthetic" ingredients.

57.     Beyond Meat intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Products.

58.     Beyond Meat knew that its representations about the Products were false in that the Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients. Beyond Meat allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

59.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Beyond Meat advertised, represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Beyond Meat's misrepresentations was justifiable.

60.     As a direct and proximate result of Beyond Meat's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Products that were worth less than the price

they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

61.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT II**
**Fraud by Omission Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclass)**

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.     Beyond Meat deliberately concealed from and failed to disclose to Plaintiff and the Class material facts, namely that its Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

64.     Beyond Meat intended that Plaintiff and the Class act based on the nondisclosure.

65.     Beyond Meat was under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Products because: (1) Beyond Meat was in a superior position to know the true state of facts about the Products; (2) Beyond Meat was in a superior position to know the actual ingredients, characteristics, and suitability of the Products; and (3) Beyond Meat knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

66.     The facts concealed or not disclosed by Beyond Meat to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

67.     Plaintiff and the Class justifiably relied on Beyond Meat's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Beyond Meat.

68.     Plaintiff and the Class were ignorant of the true facts about the actual ingredients, characteristics, and suitability of the Products, and did not have an equal opportunity to discover them. As a direct and proximate result of Beyond Meat's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

69.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT III**
**Negligent Misrepresentation Against Defendant on Behalf of the Class**
**(or, alternatively, the State Subclass)**

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Beyond Meat had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Products.

72.     Beyond Meat breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Beyond Meat and by failing to promptly remove the Products from the marketplace or to take other appropriate remedial action.

73.     Beyond Meat knew or should have known that the ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Beyond Meat. Specifically, Beyond Meat knew or should have known that: (1) the Products did not contain the %DV of protein as advertised on the packaging; (2) the Products did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients because they contained methylcellulose, and/or other ingredients or contaminants that do not conform to the packaging; and (4) the Products were otherwise not as warranted and represented by Beyond Meat.

74.     As a direct and proximate result of Beyond Meat conduct, Plaintiff and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

75.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV
## Unjust Enrichment Against Defendant on Behalf of the Class
### (or, alternatively, the State Subclass)

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     Substantial benefits have been conferred on Beyond Meat by Plaintiff and the Class through the purchase of the Products. Beyond Meat knowingly and willingly accepted and enjoyed these benefits.

78.     Beyond Meat either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Products would have the qualities, characteristics, and ingredients represented and warranted by Beyond Meat. As such, it would be inequitable for Beyond Meat to retain the benefit of the payments under these circumstances.

79.     Beyond Meat's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Beyond Meat to retain the benefits without payment of the value to Plaintiff and the Class.

80.     Plaintiff and the Class are entitled to recover from Beyond Meat all amounts wrongfully collected and improperly retained by Beyond Meat, plus interest thereon.

81.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT V
## Violations of Texas's Deceptive Trade Practices-Consumer Protection Act,
## Tex. Bus. & Com. Code Ann. § 17.01, *et Seq.*, Against Defendant on Behalf of the Class (or, alternatively, the State Subclass)

82.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.     Plaintiff and each Class member is a "consumer," as that term is defined in Texas Business & Commerce Code Ann. § 17.45(4).

84.     The Products are "goods," as that term is defined in Texas Business & Commerce Code Ann. § 17.45(1).

85.     Beyond Meat is a "person" as that term is defined in Texas Business & Commerce Code Ann. § 17.45(3).

86.     The Texas Deceptive Trade Practices Act prohibits any "false, misleading, or deceptive acts or practices." Tex. Bus. & Com. Code Ann. § 17.46.

87.     Beyond Meat's conduct alleged herein violated the following provisions of the Texas Deceptive Trade Practices Act ("DTPA"):

(a)     Texas Business & Commerce Code Ann. section 17.46(b)(5), by knowingly and/or intentionally representing that the Products have characteristics, ingredients, uses, benefits, or quantities which they do not have, specifically that the Products:

  i.      Contain the %DV of protein advertised on the packaging;

  ii.     Are made only from "natural" ingredients;

  iii.    Are made without "artificial" ingredients; and

  iv.     Are made without "synthetic" ingredients

(b)     Texas Business & Commerce Code Ann. section 17.46(b)(7), by knowingly and/or intentionally representing that the Products are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they were of another;

(c)     Texas Business & Commerce Code Ann. section 17.46(b)(9), by knowingly and/or intentionally advertising the Products with intent not to sell them as advertised; and

(d)     Texas Business & Commerce Code Ann. section 17.46(b)(9), by knowingly and/or intentionally failing to disclose information concerning the Products which was known at the time of the transaction where such failure to disclose such information was intended to induce Plaintiff and the Class into a transaction into which they would not have entered had the information been disclosed.

88.     Plaintiff and the Class relied on these false, misleading, and deceptive acts and practices to their detriment, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

89.     Defendant's acts were knowing and intentional, entitling Plaintiff and the Class to treble damages under DTPA section 17.50(b)(1).

90.     In accordance with DTPA section 17.50(b)(2), Plaintiff and the Class seek an order enjoining Beyond Meat from continuing to conduct business through false, misleading, and deceptive acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

91.     In accordance with DTPA section 17.50(b)(3), Plaintiff and the Class also seek an order for the restitution of all monies from the sale the Products, which were unjustly acquired through false, misleading, and deceptive acts and practices.

92.     In accordance with DTPA section 17.50(b)(4), Plaintiff and the Class also seek any other relief which the Court deems proper.

93.     In accordance with DTPA section 17.50(d), Plaintiff and the Class also seek an award of attorneys' fees.

**COUNT VI**

**Breach of Express Warranty Against Defendant In Violation of Texas's Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.50(a)(2), on Behalf of the Class (or, alternatively, the State Subclass)**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     Beyond Meat marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiff and the Class.

96.     Beyond Meat expressly warranted, advertised, and represented to Plaintiff and the Class that its Products:

> a.   contain the %DV of protein advertised on the packaging;
>
> b.   use all-natural ingredients;
>
> c.   are made without "artificial" ingredients; and
>
> d.   are made without "synthetic" ingredients

97.     Beyond Meat made these express warranties regarding the Products' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Products.

98.     Beyond Meat's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiff and the Class. Plaintiff and the Class relied on Beyond Meat's advertisements, warranties, and representations regarding the Products in deciding whether to purchase the Products.

99.     The Products do not conform to Beyond Meat's advertisements, warranties and representations in that they:

    a.   contain a substantially lower %DV of protein than advertised on the packaging;

    b.   are made with ingredients that are not natural;

    c.   are made with artificial ingredients; and

    d.   are made with synthetic ingredients.

100.    Beyond Meat was on notice of this breach as it was aware of the inaccurate %DV of protein in the Products and because it was aware of the presence of non-natural, artificial, and synthetic ingredients such as methylcellulose in the Products.

101.    Privity exists because Beyond Meat expressly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, are not made with artificial ingredients, and are not made with synthetic ingredients.

102.    As a direct and proximate result of Beyond Meat's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased at all had they known of the true content of protein, and the nature and quality of ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

103.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the DTPA and common law for Beyond Meat's failure to deliver goods conforming to its express warranties and resulting breach.

## COUNT VII
**Breach of Implied Warranty of Merchantability In Violation of Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.50(a)(2), Against Defendant on Behalf of the Class (or, alternatively, the State Subclass)**

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.    Beyond Meat is a merchant engaging in the sale of goods to Plaintiff and the Class.

106.    There was a sale of goods from Beyond Meat to Plaintiff and the Class.

107.    At all times mentioned herein, Beyond Meat manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiff and the Class, Beyond Meat impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use. Beyond Meat breached the implied warranties of merchantability by failing to provide merchantable goods because the Products do not contain the %DV of protein advertised, and therefore Plaintiff is unable to consume the amount of stated %DV of protein. In other words, a person seeking to intake the amount of protein identified on the label by consuming the Products cannot in fact consume the identified amount of protein. Therefore, the Products are not merchantable or fit for their ordinary purposes.

108.    Not only did the Products not contain the %DV of protein advertised on the packaging, but also they failed to conform to Beyond Meat's promise that the Products use all-natural ingredients and contain no artificial and/or synthetic ingredients. Plaintiff and the Class relied on Beyond Meat's labels, promises, and affirmations of fact when they purchased the Products.

109.    Beyond Meat breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or label as each product did

not contain the %DV of protein advertised on the packaging, in addition to other representations regarding all natural and no artificial or synthetic ingredients.

110.    Beyond Meat was on notice of this breach, as it is aware of the protein quantity in the Products, as well as the full list of ingredients used in its Products including methylcellulose.

111.    Privity exists because Beyond Meat impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, were not made with artificial ingredients, and were not made with synthetic ingredients

112.    As a direct and proximate result of Beyond Meat's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Product that is worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

113.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the DTPA and common law for Beyond Meat's failure to deliver goods conforming to their implied warranties and resulting breach.

## COUNT VIII
### Unconscionable Actions In Violation of Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.50(a)(3), Against Defendant on Behalf of the Class (or, alternatively, the State Subclass)

114.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

34

115.   The Deceptive Trade Practices-Consumer Protection Act prohibits any "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5).

116.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is unconscionable because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

117.   Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unconscionable because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one the consumers themselves can reasonably avoid.

118.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these Products in the future if they can be assured that, so long as the Products contain the advertised %DV of protein, and are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients and/or any other ingredients or contaminants that do not conform to the packaging claims.

119.   Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Beyond Meat as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class, and requiring Beyond Meat to bear the costs of class notice;

B.      An order enjoining Beyond Meat from selling the Products in any manner suggesting or implying that they are all-natural, or do not contain artificial or synthetic ingredients;

C.      An order requiring Beyond Meat to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief;

D.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Beyond Meat from continuing the unlawful practices alleged herein, and injunctive relief to remedy Beyond Meat's past conduct and/or crate a testing and compliance program to ensure that the Products meet the representations made on the packaging;

E.      An order requiring Beyond Meat to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

F.      An order requiring Beyond Meat to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G.      An order requiring Beyond Meat to pay all actual and statutory damages permitted under the counts alleged herein;

H.      An order requiring Beyond Meat to pay punitive damages on any count so allowable;

I.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: January 13, 2023                    **CORY FEIN LAW FIRM**


By:  /s/ Cory S. Fein

Cory S. Fein
Texas Bar No. 06879450
712 Main St., Suite 800
Houston, TX 77002
(713) 730-5001 (phone)
(530) 748-0601 (fax)
cory@coryfeinlaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Robert K. Shelquist
100 Washington Ave S., Suite 2200
Minneapolis, MN 55401
(612) 339-6900 (phone)
(612) 339-0981 (fax)
rkshelquist@locklaw.com

**MORRIS KANDINOV LLP**
Leonid Kandinov (279650)
550 West B Street, 4th Floor
San Diego, CA 92101
 (619) 780-3993 (phone)
leo@moka.law

**Attorneys for Plaintiff**